AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

| | | |
|---|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>HISTORICAL RECORDS ASSOCIATED<br>WITH AT&T CELL NUMBER 281-220-7383 | )<br>)<br>)<br>)<br>)<br>) | Case No. H18-1241M |

United States Courts
Southern District of Texas
FILED
AUG - 6 2018
David J. Bradley, Clerk of Court

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*: information stored by AT&T at 11760 US Highway 1, Suite 600, North Palm Beach, Florida

located in the ____Southern____ District of ____Texas____, there is now concealed *(identify the person or describe the property to be seized)*: The information set forth in Attachment B of the Affidavit.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, USC 1951(a) | Interference with Commerce by Robbery |
| Title 18, USC 924(c) | Use of a Firearm in the Commission of a Violent Crime |
| Title 18, USC 2 | Attempt |

The application is based on these facts:
see attached affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

FBI Special Agent Jeffrey Coughlin
Printed name and title

Sworn to before me and signed in my presence.

Date: Aug 6 2018

City and state: Houston TX

_____
Judge's signature

Nancy K. Johnson, U.S. Magistrate Judge
Printed name and title

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INORMATION ASSOCIATED WITH THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER **281-220-7383**, THAT IS STORED AT PREMISES CONTROLLED BY **AT&T** | Case No. _____ |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, **Jeffrey M. Coughlin,** being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number **281-220-7383**[1] ("the **SUBJECT PHONE**"), that is stored at premises controlled by **AT&T** a wireless telephone service provider headquartered at 11760 U.S. Hwy. 1, Ste. 600, North Palm Beach, Florida 33408. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) and Rule 41 of the Federal Rules of Criminal Procedure to require **AT&T** to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

---

[1] The information sought in this affidavit was originally provided to agents of the government pursuant to court order issued under 18 U.S.C. § 2703(d) in cause number H-16-1649M on November 8, 2016. The instant search warrant is being sought out of an abundance of caution in light of the Supreme Court's recent decision in *Carpenter v. United States*, 138 S. Ct. 2206 (2018) based on the facts known to the government at that point in the investigation. The United States does not concede that the ruling in *Carpenter* should be applied retroactively.

2.  I am a Special Agent with the Federal Bureau of Investigation (FBI) and have worked as such since August 2014. I am currently assigned to the Houston Field Office, Violent Crime Task Force. During my law enforcement career, I have investigated criminal matters relating to bank and armored truck robberies, violent fugitives, drug trafficking, and crimes against children. Through these investigations as well as my previous training, I have become familiar with the patterns of activity regarding armored truck robbery suspects and the methods they employ to plan, coordinate, and conduct robberies. Consequently, I am familiar with the ways in which suspects utilize cellular telephones to coordinate these activities.

3.  The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.  Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 1951(a), 924(c), and 2 have been committed by **Redrick Jevon BATISTE**, using the **SUBJECT PHONE**. There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## PROBABLE CAUSE

5.  The FBI Violent Crime Task Force has been investigating the alleged criminal activity of **Redrick Jevon BATISTE,** and others known and unknown. **BATISTE** is suspected of being the leader of an armored truck robbery crew responsible for at least two armored truck robberies. Additionally, **BATISTE** is suspected of murdering two armored truck couriers during the course of this criminal conduct.

6.       According to source information, **BATISTE** conducted violent armored truck robberies as a source of income. Source reporting indicated that **BATISTE** planned to conduct four robberies each year. He regularly scouted out banks and armored truck routes in order to identify future robbery locations and times. **BATISTE** meticulously surveilled these banks and armored truck routes for months prior to selecting a target site. He then assembled a crew to conduct the robbery with him. **BATISTE** had escalated his level of violence during each of the robberies he is suspected of orchestrating.

7.       On September 1, 2016, Detectives with the Houston Police Department Homicide Division met with a Confidential Informant (CI) who provided information regarding an armored truck robbery/murder, which occurred on August 29, 2016. At approximately 5:45pm, a Brink's armored truck arrived at the Wells Fargo Bank, located at 13201 Northwest Freeway, Houston, Harris County, Texas, to conduct a scheduled ATM service. David Guzman, a Brinks armored truck courier, exited the armored truck and began servicing the ATMs. Guzman was servicing his 3rd and final ATM when, according to surveillance video at the ATMs, he was shot from behind from a long distance. A blue sedan pulled up to the courier. One occupant exited the sedan, approached Guzman on the ground and appeared to spray something in Guzman's direction. He then grabbed a money bag containing approximately $120,000.00 in twenty dollar bills, re-entered the blue sedan, and departed south on Hollister. Guzman died at the scene. The CI identified the blue sedan as belonging to **BATISTE**. The CI further stated that there was a white SUV, which belonged to **BASTISTE**.

8.       On or about September 2, 2016, detectives with HPD conducted an open records request on **BATISTE**, learning that **BATISTE** resided at 1351 Tarberry Road, Houston, Texas.

A check of Texas vehicle registry revealed that there was a black Jeep Wrangler registered to **BATISTE** at that address.

9. On or about September 3, 2016, HPD officers obtained a state court order for a tracking device, which was placed on the black Jeep Wrangler. Additionally, video surveillance on the Tarberry residence was established by ATF and HPD at that time.

10. In an effort to both corroborate the account of the CI, and to investigate the murder and armed robbery occurring on August 29, 2016, a search of surveillance videos from surrounding businesses was conducted. Agents' attentions were drawn to the video of the Extended Stay America Hotel located directly across the street from the scene of the robbery and Guzman's murder. Depicted in the video was a white Toyota 4-Runner which arrived at approximately 2:54pm, and left at approximately 5:57pm, immediately after the murder/armed robbery took place.[2] During the three-hour period that the vehicle was parked in the Extended Stay America lot, the video shows that no one exited or entered the vehicle.

11. On September 7, 2016, officers with the HPD North Tactical unit located, in the parking lot of The Meadows on Blue Bell apartment complex, a white Toyota 4-Runner, matching the description of the vehicle seen in the Extended Stay America video, which was also similar in appearance to the SUV described by the CI. The license plate on the rear of the vehicle was listed as stolen from a Toyota 4-Runner, and the license plate on the front of the vehicle was also listed as stolen, but from a completely different Toyota 4-Runner. Moreover, neither of these license plates matched. The vehicle itself was also listed as stolen based on the VIN number. The owner of the vehicle is Budget Rent-a-Car. The vehicle was reported stolen on June 12, 2015, by a person

---

[2] The times on the bank surveillance video and the Extended Stay America video are approximate. The white SUV left the parking lot immediately after the robbery was concluded.

4

who had legally rented the vehicle. Officers noted that in the rear hatch door of the vehicle, adjacent to the license plate, an aftermarket port hole had been cut out. This port hole was large enough to accommodate a rifle with a scope.

12. On or about September 8, 2016, HPD officers obtained a state court order for a tracking device, which was placed on the white Toyota 4-Runner. Additionally, video surveillance on the vehicle was established by the FBI at that time.

13. On September 14, 2016, at approximately 6:45am, surveillance showed that the Jeep Wrangler registered to **BATISTE** traveled from 1351 Tarberry Road, **BATISTE**'s residence, to The Meadows on Blue Bell. Both the video surveillance and the tracking device attached to the Toyota 4-Runner revealed that the Toyota 4-Runner was moved to another parking space within the same parking lot. Officers and agents believe that this movement, and the time during which it was conducted, was meant to conceal **BATISTE**'s identity and to avoid the vehicle being identified by apartment management as being stolen or abandoned and towed away.

14. On September 14, 2016, the CI placed a consensually monitored phone call to **BATISTE,** who was utilizing phone number **281-630-0305**, to coordinate a meeting the following day to discuss an upcoming robbery.

15. On September 7, 2016, a court order, issued from the United States District Court for the Southern District of Texas, under cause number H-16-1299M, authorized agents of the FBI to request a tower dump pursuant to 18 U.S.C. § 2703(d)[3] for the area of the Wells Fargo Bank, 13201 Northwest Freeway, on August 29, 2016, between 5:30pm and 6:10pm, the times

---

[3] Tower dumps were specifically excluded from the decision in *Carpenter*. ("Our decision today is a narrow one. We do not express a view on matters not before us: real-time CSLI or "tower dumps" (a download of information on all the devices that connected to a particular cell site during a particular interval))." *Carpenter v. United States*, 138 S. Ct. 2206, 2220 (2018).

5

immediately before and after the robbery. Information returned revealed that **713-835-4575**, the cellular number believed to be used by **Marc HILL**, was in close proximity to the bank between 5:45pm to 6:01pm, during the robbery. During that time, **713-835-4575** was in contact on two occasions with **832-891-6015**, the cellular number believed to be used by **Nelson POLK**, which was also in close proximity to the bank.

16. Further analysis of the telephone devices in the area revealed that numbers **832-891-6015**, known to be used by **POLK**, and **713-835-4575**, known to be used by **HILL**, were also in contact with the **SUBJECT PHONE** during the time of the murder/robbery from 5:45pm to 6:00pm. Specifically, there was a thirty-two minute call between **832-891-6015** and the **SUBJECT PHONE** from 5:32pm to 6:04pm, the time period in which the robbery/murder occurred.

17. The **SUBJECT PHONE** is believed to be utilized by **BATISTE** during surveillance of the bank and the execution of the robbery/murder. Investigators came to this conclusion because on the afternoon of August 29, 2016, **BATISTE's** primary number, **281-630-0305**, was not in use. Cell site data revealed that his primary device was in the vicinity of 1351 Tarberry Road during that time. However, the **SUBJECT PHONE** was in contact with phones associated to both **HILL** and **POLK** on the afternoon of the robbery/murder. Furthermore, cell site data places the **SUBJECT PHONE** in close proximity to the bank at the time of the robbery. The **SUBJECT PHONE** was also never in contact with **281-630-0305** on August 29, 2016.

18. On July 18, 2018, a search warrant was obtained under H-18-1164M in the United States District Court for the Southern District of Texas, for call detail records and cell site

6

information for the telephone number known to be used by **BATISTE, 281-630-0305**.[4] The records obtained pursuant to that search warrant revealed that **281-630-0305** was in the vicinity of the Wells Fargo Bank, located at 13201 Northwest Freeway, for three hours on the morning of the day of the robbery, August 29, 2016. On the day of the robbery, **281-630-0305**, was in direct contact with cellular number believed to be used by **Marc HILL, 713-835-4575**, on five separate occasions, and cellular number believed to be used by **Nelson POLK, 832-891-6015**, on 17 occasions.

19. On July 31, 2018, a probable cause search warrant was obtained under H-18-1227M in the United States District Court for the Southern District of Texas, for call detail records and cell site information for the telephone number known to be used by **HILL, 713-835-4575**.[5]

20. On July 31, 2018, a probable cause search warrant was obtained under H-18-1226M in the United States District Court for the Southern District of Texas, for call detail records and cell site information for the telephone number known to be used by **POLK, 832-891-6015**.[6]

21. Cell tower site information places each of the aforementioned devices frequently in the vicinity of the Wells Fargo Bank, located at 13201 Northwest Freeway, from June 1, 2016 to August 28, 2016.

22. Specifically, cell site information revealed that the number known to be used by **BATISTE, 281-630-0305**, was located in close proximity to the Wells Fargo Bank, located at

---

[4] The information sought in this affidavit was originally provided to agents of the government pursuant to court order issued under 18 U.S.C. § 2703(d) in cause number H-16-1391M on September 21, 2016.

[5] The information sought in this affidavit was originally provided to agents of the government pursuant to court order issued under 18 U.S.C. § 2703(d) in cause number H-16-1494M on November 3, 2016.

[6] The information sought in this affidavit was originally provided to agents of the government pursuant to court order issued under 18 U.S.C. § 2703(d) in cause number H-16-1492M on November 3, 2016.

13201 Northwest Freeway for three hours on the afternoon of August 16, 2016, during which time it was in direct contact with **713-835-4575**, on two separate occasions.

23. Call detail records and cell site information for telephone number **713-835-4575** also revealed that this number was in the vicinity of the Wells Fargo Bank, located at 13201 Northwest Freeway, for approximately 7 hours on August 18, 2016, during which time, the **SUBJECT PHONE** was in direct contact with **713-835-4575**, on six separate occasions.

24. Call detail records and cell site information for telephone number **832-891-6015** further revealed that this number was in the vicinity of the Wells Fargo Bank, located at 13201 Northwest Freeway, for approximately 7 hours on August 18, 2016, during which time, the **SUBJECT PHONE** was in direct contact with **832-891-6015**, on 17 separate occasions.

25. On August 29, 2016, the day of the murder/armed robbery, cell site information showed that the **SUBJECT PHONE** was in close proximity to the bank. That device communicated with **713-835-4575**, the device associated with **HILL**, by phone call on five occasions. That device also communicated with **832-891-6015**, the device associated with **POLK**, on thirteen occasions, five times by text messaging and eight times by phone call. Moreover, the **SUBJECT PHONE** was in contact with the **832-891-6015**, the device associated with **POLK**, by phone call from 5:32pm to 6:04pm, terminating immediately after commission of the crime.

26. In my training and experience, I have learned that participants in armored truck robberies often spend multiple weeks conducting surveillance of the armored truck. This includes watching the armored truck at specific service locations as well as along the driving route. This is done to determine the armored truck service schedule at each location. Participants often use multiple vehicles and communicate via cellular telephones to coordinate this surveillance. The method in which the robbery and murder of Guzman were conducted on August 29, 2016 would

require precise coordination of multiple participants in multiple vehicles from different locations around the Wells Fargo bank. Again, in my training and experience, participants coordinating this complex of a robbery would communicate on an open line via cellular telephones.

27. Obtaining the telephone numbers which the **SUBJECT PHONE** is in contact with while the **SUBJECT PHONE** is utilizing cell towers in vicinity of the Wells Fargo bank on the day of the robbery and murder as well as the days and weeks prior would assist in identifying additional participants involved in the robbery and murder.

28. In my training and experience, I have learned that **AT&T** is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

29. Based on my training and experience, I know that **AT&T** can collect cell-site data about the **SUBJECT PHONE**. I also know that wireless providers such as **AT&T** typically

collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

30.    Based on my training and experience, I know that wireless providers such as **AT&T** typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as **AT&T** typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the **SUBJECT PHONE**'s user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

31.    Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

32. I further request that the Court direct **AT&T** to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on **AT&T**, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

_____
JEFFREY M. COUGHLIN
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on ___Aug 6___, 2018, and I find probable cause.

_____
NANCY K. JOHNSON
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number **281-220-7383** ("the Account"), that are stored at premises controlled by **AT&T** ("the Provider"), headquartered at 11760 U.S. Hwy. 1, Ste. 600, North Palm Beach, Florida 33408.

# ATTACHMENT B

## Particular Things to be Seized

**I.     Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period of August 14, 2016 to August 29, 2016.

   a. The following information about the customers or subscribers of the Account:

      i. Names (including subscriber names, user names, and screen names);

      ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

      iii. Local and long distance telephone connection records;

      iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

      v. Length of service (including start date) and types of service utilized;

      vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

      vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

      viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

      i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

      ii. information regarding the cell towers and sectors through which the communications were sent and received.

**II.**   **Information to be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of **Title 18 U.S.C. §§ 1951(a), 924(c), and 2** involving **281-220-7383** during the period August 14, 2016 to August 29, 2016.